
**FILED**

**November 23, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:39 PM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Samuel Panzarella, | ) | Docket No.: 2015-01-0383 |
| Employee, | ) | |
| | ) | State File No.: 79681 2015 |
| v. | ) | |
| | ) | Judge: Audrey A. Headrick |
| Amazon.com, Inc., | ) | |
| Employer. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on October 28, 2016, for a Compensation Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2015). However, for the reasons set forth below, this Court finds that the disputed issue of permanent partial disability benefits is not ripe for decision and, therefore, it cannot enter a final order resolving all disputed issues. Accordingly, the Court will treat the hearing as an expedited, or interlocutory, hearing pursuant to Tennessee Code Annotated section 50-6-239 (2015).

The primary legal issue is whether Mr. Panzarella sustained an injury arising primarily out of and in the course and scope of his employment.[1] If so, then the question turns to the extent of entitlement to medical and temporary disability benefits. Based upon the evidence presented, the Court holds that Mr. Panzarella is likely to prevail at a hearing on the merits and grants his request for medical and temporary disability benefits.

### History of Claim

This case involves an incident that occurred on August 21, 2015, while Mr. Panzarella performed a packing job at Amazon. Mr. Panzarella testified he ran out of labels at his workstation and walked to another station to get more. As he was walking, he saw a piece of paper lying on the floor. Mr. Panzarella's undisputed testimony was

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

that Amazon requires its employees to pick up any paper lying on the floor, and to do so by bending at his knees, holding the item to the center of one's body, and standing back up. As Mr. Panzarella was squatting to pick the paper up from the floor, his left knee "went out" and he hit the knee on the floor when he fell. When Mr. Panzarella stood up, he stated he felt intense pain behind his left knee.

After his fall, Mr. Panzarella went to AmCare, Amazon's on-site medical clinic. Mr. Panzarella stated that, while walking to AmCare, his left knee "gave way" and he fell again. The provider at AmCare provided him with a Non-Occupational Complaint Report to complete. (Ex. 6.) On part of the form, it instructs the employee to "Describe your reason for visiting AmCare today." *Id.* Mr. Panzarella wrote, "muscle spasm in calf [illegible] radiate to behind knee caused loss of balance 2 times" with a date of onset as "8-21-15." *Id.* He indicated on the form that this was a new complaint and testified he had no problems or treatment for his left knee prior to his fall on August 21. Mr. Panzarella stated the AmCare provider did not want to complete the necessary documents to send him to the emergency room, so he told the provider he would see his doctor after work. The typed form completed by the AmCare provider classified the injury as "non-work related" and noted that Mr. Panzarella "chose to see his PCP about it and will do so soon if the spasms persist." *Id.* Amazon did not offer Mr. Panzarella a panel of physicians.

After his shift was over, Mr. Panzarella saw Jill Yeager, a physician's assistant (PA) at Fast Access Healthcare. (Ex. 2.) He gave a history of having "chronic pain in R ankle, compensating on L leg & caused a fall onto L knee." *Id.* Mr. Panzarella testified he had chronic right ankle pain from standing ten hours per night. PA Yeager's office note indicated Mr. Panzarella's leg buckled, causing him to fall to the floor.

Mr. Panzarella returned to Amazon right after he saw PA Yeager. He stated Nic Elliott, Human Resource Assistant, presented him with a Request for Medical Information Letter (RMI). (Ex. 7.) The letter indicated Amazon "became aware of [his] non-work related medical condition/restrictions that may limit [his] current physical capabilities to perform [his] normal job duties." *Id.* It further stated, "we are provisionally placing you off work for a period of time no longer than seven (7) calendar days until we receive a Request for Medical Information (RMI) form completed by your healthcare provider." *Id.*

Mr. Panzarella continued treating with PA Yeager, who completed Amazon's RMI form. She restricted Mr. Panzarella from August 21 forward with "limited walking & standing due to knee pain secondary to fall" and marked "undetermined" regarding work-relatedness. *Id.* Mr. Panzarella's undisputed testimony was that Human Resources advised him that there were no jobs available for him to do at that time. He also stated he called Amazon at least two times a week to check on his work status, but no one returned his calls. The following month, PA Yeager kept Mr. Panzarella on "sedentary job

restrictions" and completed an Attending Physician's Statement of Work Capacity and Impairment. *Id.* On the form, she checked "yes" when asked if Mr. Panzarella's left knee condition was "due to injury or illness arising out of the patient's employment." *Id.*

PA Yeager subsequently ordered a left-knee MRI and referred Mr. Panzarella to see an orthopedic surgeon. Amazon later offered Mr. Panzarella a panel of physicians from which he selected Dr. Barry Vaughn. Mr. Panzarella saw Dr. Vaughn on November 24. He reported the following history to Dr. Vaughn:

> Patient reports leaning forward to pick up a piece of paper at work. When he twisted his left knee, he felt a tearing sensation in the posteromedial aspect. His knee then gave way and he fell onto the knee applying a valgus stress to the knee. He has had left knee pain with swelling, popping and giving way since the injury.

(Ex. 3.) Dr. Vaughn reviewed Mr. Panzarella's MRI and x-rays and performed a physical examination. He diagnosed Mr. Panzarella with medial meniscus derangement, medial collateral ligament (MCL) sprain, and anterior cruciate ligament (ACL) sprain. Dr. Vaughn recommended surgery for the meniscus tear followed by physical therapy and restricted him to sedentary work.

As Dr. Vaughn explained during his August 17, 2016 deposition, a desk job is the ideal job to accommodate Mr. Panzarella's sedentary work restrictions until he has surgery. (Ex. 4.) Mr. Panzarella testified Amazon never made an offer for him to return to work. He also stated he applied on-line for over 100 jobs but received no job offers after disclosing his work restrictions.

Dr. Vaughn testified regarding Mr. Panzarella's meniscus tear. He stated Mr. Panzarella did not indicate to him that his right ankle had anything to do with his left knee giving out. Dr. Vaughn explained that a meniscus tear is usually caused by a twisting-type injury. He confirmed Mr. Panzarella reported to him that his left knee twisted before he fell onto it. Dr. Vaughn opined his diagnosis of a meniscus tear is consistent with the type of injury reported by Mr. Panzarella. Once he fell onto his knee, Dr. Vaughn suspected it likely caused his ACL and MCL sprains.

During cross-examination, counsel questioned Dr. Vaughn regarding the cause of Mr. Panzarella's fall. The following dialogue occurred:

> Q: And again, according to the history he gave you, there was no hazard on the floor or in his work environment that caused him to have this muscle cramp and his knee or leg to give way, was there?

> A: Other than picking up the piece of paper, no.

Q: And his knee or leg could have given out and he could have developed this cramp whether he was at work or anywhere else doing this maneuver, couldn't he?

A: Correct.

Q: And Mr. Panzarella is overweight; correct?

A: Correct.

Q: Could that be a factor in him losing his balance and falling when bending over?

A: It can be, yes.

*Id.*

Counsel also questioned Dr. Vaughn regarding the act of bending over in relation to Mr. Panzarella's knee or leg giving way. When asked whether Mr. Panzarella's knee would have gone out when it did if he had not bent over to pick up the paper, he responded, "no." *Id.* Under cross-examination, Dr. Vaughn explained, "[i]t kind of depends on the position that he put himself in to retrieve the paper . . . I mean, basically, it depends on how the action was performed." *Id.* Counsel asked, "[s]o it would depend on the action as opposed to whether or not there was a piece of paper in the floor or he was bending down to tie his shoes; correct?" *Id.* Dr. Vaughn responded, "[c]ertainly the action is what's responsible, correct." *Id.*

Dr. Vaughn confirmed that Mr. Panzarella is not yet at maximum medical improvement. Other than the one-time visit with Dr. Vaughn on November 24, Amazon has not authorized any other treatment. It argues that Mr. Panzarella is not entitled to any benefits under the Workers' Compensation Law because he suffered an idiopathic injury and provided no medical proof of a hazard incident to his employment.

**Interlocutory Hearing**

The Court will first address its reasoning for treating the Compensation Hearing as an interlocutory hearing. On December 30, 2015, Bob Wharton, counsel for Mr. Panzarella, filed a Request for Initial Hearing. During the telephonic hearing on February 1, 2016, the parties agreed the case was not ripe for an initial hearing. Pursuant to a February 4 agreed order, the parties set this matter for an Expedited Hearing on April 27. The setting of the Expedited Hearing was "[c]ontingent upon Mr. Panzarella timely filing a Request for Expedited Hearing" by February 5. The parties agreed to complete discovery in a timely manner and to cooperate in the scheduling of any depositions.

On March 29, counsel for both sides communicated via e-mail with the Clerk. Defense counsel, Kristen Stevenson, advised the Clerk that Mr. Wharton did not file a Request for Expedited Hearing by February 5 as agreed upon, and no discovery had occurred. In response, Mr. Wharton advised, in part, that he did not want to proceed with an Expedited Hearing and wanted to have a trial.

Due to the breakdown in the terms of the agreed order, this Court ordered the parties to participate in an Initial Hearing on April 27. The Initial Hearing resulted in the Court entering an order setting the matter for a Compensation Hearing on July 28. Mr. Wharton filed a Motion for Conference, which the Court held with the parties on June 29. The purpose of the conference was to request an extension of time for the Initial Hearing Order deadlines due to a personal family situation. For good cause shown, the Court agreed to reschedule the Compensation Hearing to September 20.

In preparation of the Compensation Hearing set for September 20, the Court found there was substantial non-compliance of Tennessee Compilation Rules and Regulations 0800-02-21-.18 (2015) (hereinafter referred to as Rule 18). Rule 18 requires that the parties must file, either jointly or separately, a prehearing statement. Concurrently with the filing of the prehearing statement, the parties must also file a proposed witness and exhibit list. Failure to do so can result in the workers' compensation judge prohibiting a witness from testifying or the admission of an exhibit. Because of this fact, the Court entered an order on September 19 cancelling and resetting the Compensation Hearing. The Court noted that Mr. Panzarella failed to file a prehearing statement, a witness list, or an exhibit list as required by Rule 18. Additionally, he did not submit medical expert opinion by either deposition transcript or Form C-32 to address the permanency of his injury.[2] Rather than proceeding with the compensation hearing and essentially forgoing a hearing on the merits, the Court continued the Compensation Hearing

The Court conducted what it intended to be a Compensation Hearing on October 28. However, Mr. Panzarella relied on Dr. Vaughn's deposition testimony, which confirmed he is not yet at maximum medical improvement. Mr. Panzarella attempted to address permanency by obtaining a conditional opinion from Dr. Vaughn on the date of maximum medical improvement and medical impairment had he performed the recommended surgery. However, the fact remains that Dr. Vaughn did not perform surgery and did not place Mr. Panzarella at maximum medical improvement.

Because the evidence submitted at the hearing did not address the permanency of Mr. Panzarella's injury, the Court cannot consider the October 28 hearing to be a Compensation Hearing. The Workers' Compensation Appeals Board has held it cannot

---

[2] Amazon filed a prehearing statement but did so after the deadline for doing so established by the Court's Initial (Scheduling) Hearing Order.

certify a compensation order as final unless all of the parties' disputes are resolved. *See*, *Rucker v. Flexible Staffing Solutions of TN, et al.*, No. 2015-02-0126, 2016 TN Wrk. Comp. App. Bd. LEXIS 23, at *18-19 (Tenn. Workers' Comp. App. Bd. May 13, 2016). In order for all of the parties' disputes to be resolved, each issue must be ripe for a decision. As reiterated by the Workers' Compensation Appeals Board, the ripeness doctrine "focuses on whether the dispute has matured to the point that it warrants a judicial decision. The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all." *Cotton v. HUMACare, Inc., et al.*, No. 2015-02-0061, 2016 TN Wrk. Comp. App. Bd. LEXIS 42, at *11 (Tenn. Workers' Comp. App. Bd. Sept. 14, 2016).

Here, Mr. Panzarella did not have the left-knee surgery recommended by Dr. Vaughn because Amazon denied his claim, so Dr. Vaughn has not yet placed him at maximum medical improvement. One of the disputed issues raised in the post-discovery Dispute Certification Notice is whether Mr. Panzarella is entitled to permanent partial disability benefits. In order for the Court to address the issue of permanency, Mr. Panzarella must be at maximum medical improvement. Accordingly, the issue of whether Mr. Panzarella is entitled to permanent partial disability benefits is simply not ripe for a decision.

### Evidentiary Ruling

During Dr. Vaughn's deposition, Mr. Panzarella's counsel made an evidentiary objection. Counsel for Amazon posed the following 98-word question to Dr. Vaughn:

> Q: I was going to say that if we were to assume that in order for Mr. Panzarella's injury to arise out of his employment, the maneuver of bending down to pick up the piece of paper and the development of the muscle cramp, or whatever caused his leg or knee to give way, needs to have been caused by a hazard or a danger peculiar to his work environment or be caused by some kind of risk inherent in his employment, if you were to assume that, would you agree his injury doesn't arise out of his employment?
>
> A: If you make that assumption, I suppose so, yes.

*Id.*

Counsel for Mr. Panzarella objected twice as to form on the basis that the question required Dr. Vaughn to provide a legal opinion. The Court agrees. The question is lengthy, confusing, and appears to ask Dr. Vaughn to provide a legal opinion. Although it is undisputed that Dr. Vaughn is qualified as a medical expert, he is not qualified to

provide a legal opinion. Accordingly, the Court sustains the objection.

## Findings of Fact and Conclusions of Law

Having addressed the ripeness issue and the evidentiary objection, the Court will now analyze the evidence under the applicable standard of proof. Mr. Panzarella bears the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, he is not required to prove every element of his claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, at an Expedited Hearing, Mr. Panzarella must come forward with sufficient evidence from which this Court might determine that he is likely to prevail at a hearing on the merits. *Id.*

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Mr. Panzarella must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Further, as the panel physician, Dr. Vaughn's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015).

*Idiopathic Injury*

Applying the forgoing principles to the facts of this case, the Court first addresses Amazon's contention that Mr. Panzarella suffered an idiopathic injury and provided no medical proof of a hazard incident to his employment. An idiopathic injury is defined as "one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Veler v. Wackenhut Servs.*, No. E2010-00965-WC-R3-WC, 2011 Tenn. LEXIS 78, at *9 (Tenn. Workers' Comp. Panel Jan. 28, 2011) (citation omitted).

Amazon's argument is not persuasive. As the Workers' Compensation Appeals Board explained in *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *8-*11 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015), the relevant inquiry is not what caused the alleged idiopathic condition or event but what

caused *the injury*. The Board noted that "cause" in the context of idiopathic injuries "means that the accident originated in the hazards to which the employee was exposed as a result of performing his job duties." *Id.* at *10. In *McCaffery*, the employer argued that a sneeze of unknown origin caused the motor vehicle accident, which resulted in the employee's injuries. In the employer's view, the accident was idiopathic and not compensable. *Id.* at *8. The Board rejected that argument, explaining that "[t]he focus is on the causal link between the employment and the accident or injury, rather than a causal link between the employment and the idiopathic episode." *Id.* at *11.

Here, the important inquiry is *not* what caused Mr. Panzarella's knee to give way. The pertinent question is what *caused* his knee injury. Mr. Panzarella's unrefuted testimony is that Amazon's policy required its employees to pick up paper lying on the floor and instructed them on the proper manner to do so. Those duties fall within the course and scope of Mr. Panzarella's employment. His knee gave way as he was squatting to pick up the paper causing his knee to hit the floor resulting in the torn meniscus. Dr. Vaughn testified his diagnosis of a meniscus tear is consistent with the type of injury reported to him by Mr. Panzarella. Therefore, the Court holds Mr. Panzarella is likely to prevail at a hearing on the merits in establishing that his injury arose primarily from a hazard incident to his employment at Amazon.

*Medical Benefits*

Next, the Court turns to whether Mr. Panzarella is entitled to medical benefits. It is undisputed that Amazon did not provide him with a panel until months after his fall when he selected Dr. Vaughn. On August 21, 2015, Mr. Panzarella sought treatment on his own with PA Yeager at Fast Access Healthcare and continued to treat with her until he saw Dr. Vaughn on November 24. However, Mr. Panzarella did not introduce any medical bills into evidence. Regarding past medical treatment, Mr. Panzarella has not come forward with sufficient evidence from which the Court can conclude he is likely to prevail at a hearing on the merits. Therefore, the Court denies Mr. Panzarella's request for payment of past medical treatment at this time.

However, Mr. Panzarella is entitled to ongoing medical treatment with Dr. Vaughn for his left-knee injury. When Dr. Vaughn last saw Mr. Panzarella in November 2015, he recommended arthroscopic surgery. If Dr. Vaughn continues to recommend surgery after he sees Mr. Panzarella again, Amazon shall authorize the surgery. Therefore, the Court holds Mr. Panzarella is likely to prevail at a hearing on the merits in establishing his entitlement to ongoing medical treatment.

*Temporary Partial Disability Benefits*

Mr. Panzarella may be entitled to temporary partial disability benefits, which is a category of vocational disability distinct from temporary total disability, if the temporary disability is not total. S*ee* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, while temporary total disability refers to an employee's condition while completely disabled from work because of the injury, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Jewell v. Cobble Construction & Arcus Restoration*, No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015) (quoting *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)).

After Mr. Panzarella's knee injury, he was continuously on restricted duty. PA Yeager placed Mr. Panzarella on light-duty work status from August 22, 2015, to November 23, 2015. Dr. Vaughn kept Mr. Panzarella on restricted duty when he saw him on November 24 and indicated during his deposition that those restrictions remained unchanged until Mr. Panzarella undergoes surgery. The unrefuted proof is that Amazon did not provide light duty work to Mr. Panzarella. Therefore, the Court holds that Mr. Panzarella is likely to prevail at a hearing on the merits in establishing his entitlement to ongoing temporary partial disability benefits from August 22, 2015, forward.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amazon or its workers' compensation carrier shall authorize medical treatment with Dr. Barry Vaughn for the August 21, 2015 left-knee injury, including surgery if he still recommends it. Mr. Panzarella or the providers shall furnish Amazon, or its carrier, bills for the charges incurred for compensable care, and Amazon or its carrier shall timely pay said charges.

2. The parties stipulated that the amount of temporary disability benefit is $273.07 per week based on Mr. Panzarella's average weekly wage of $409.59.

3. Payment of past due temporary partial disability benefits in the amount of $17,944.60 shall be made for the period from August 22, 2015, to November 23, 2016.

4. Amazon or its workers' compensation carrier shall continue to pay temporary disability benefits in regular intervals to Mr. Panzarella until he is no longer eligible for those benefits by reaching maximum medical improvement, by returning to work at a wage equal to or greater than the pre-injury wage, or by a release without restrictions by the authorized treating physician. Amazon's

representative shall immediately notify the Bureau, Mr. Panzarella, and Mr. Panzarella's counsel, if any, of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

5. This matter is set for a Status Hearing on January 26, 2017, at 1:00 p.m., Eastern Time.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

IT IS SO ORDERED.

**ENTERED this the 23rd day of November, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**


Status Hearing:

A Status Hearing has been sent for **January 26, 2017, at 1:00 p.m. Eastern Time** with **Judge Audrey Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Status Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's

position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Technical record:[3]

1. Petition for Benefit Determination, filed November 6, 2015;
2. Dispute Certification Notice, filed December 28, 2015;
3. Request for Initial Hearing, filed December 30, 2015;
4. Agreed Order Setting Case for Expedited Hearing, entered February 4, 2016;
5. Request for Expedited Hearing and Affidavit, filed February 5, 2016
6. Notice of Filing Notice of Denial, filed February 11, 2016;
7. Notice of Filing of Medical Records from Physicians Quality Care, filed February 17, 2016;
8. Motion for Status Conference, filed April 5, 2016;
9. Order Setting Initial Hearing, filed April 6, 2016;
10. Initial Hearing Order, filed May 2, 2016;
11. Motion for Conference, filed May 27, 2016;
12. Statement Concerning Up to Date Medical Records, filed June 3, 2016;
13. Notice of Filing Medical Reports from Parkridge East Hospital, filed June 3, 2016;
14. Amended Petition for Benefit Determination, filed June 29, 2016;
15. Order Amending Initial Hearing Order, entered July 5, 2016;
16. Dispute Certification Notice, filed September 9, 2016;
17. Amazon's Pre-Hearing Statement, filed September 16, 2016;
18. Order Cancelling and Resetting Compensation Hearing, entered September 19, 2016;
19. Notice of Compensation Hearing, filed September 23, 2016
20. Mr. Panzarella's Pre-Compensation Hearing Statement, filed October 3, 2016;
21. Amazon's Hearing Brief, filed October 26, 2016; and,
22. Mr. Panzarella's Trial Brief, filed October 28, 2016.

Exhibits:

1. MRI and x-rays from Chattanooga Imaging;
2. Medical records of Fast Access Healthcare;
3. Medical records of Dr. Barry Vaughn;
4. Deposition of Dr. Vaughn;
5. Medical records of Parkridge East Hospital;
6. Non-Occupational Complaint Report dated August 21, 2015; and,
7. Request for medical information letter from Amazon dated August 21, 2015.

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of November, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Bob Wharton | | | | | X | wharton@hjwlawfirm.com |
| Kristen Stevenson | | | | | X | kcstevenson@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov